### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

ROBERT E. SANDIFER                                           CIVIL ACTION

VERSUS                                                       NO. 14-2992

ROBERT C. TANNER, ET AL.                                    SECTION: "B"(1)

### REPORT AND RECOMMENDATION

Plaintiff, Robert E. Sandifer, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983.[1]  He named as defendants:  Warden Robert C. Tanner; Assistant Warden Wayne Cook; Dr. Casey McVea; and "Dr. Soil."  In this lawsuit, plaintiff claims that he has been denied adequate medical care.  In support of that claim, he makes the following allegations.

On August 13, 2013, plaintiff consulted Dr. McVea, the prison doctor, concerning a rash. After conducting an examination, Dr. McVea diagnosed plaintiff as having an allergic reaction to an unknown substance and prescribed a topical cream.  When that cream failed to resolve plaintiff's condition, Dr. McVea prescribed a different cream.  Although plaintiff requested to see a specialist, Dr. McVea refused.

---

[1]  In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

Plaintiff later sent a letter of complaint to Assistant Warden Cook.  On September 23, 2014, Cook responded, stating:

> I have received your letter of complaint that you have made several sick calls about your rash, and it has not improved.  You stated that you have had blood work done as well as other tests, and you are requesting that you be allowed to see a specialist.  I checked and you are scheduled to see Dr. McVea tomorrow.  He is the Medical authority at RCC and is competent and compassionate.  Hopefully he will be able to find a solution to your problem.  Only Dr. McVea is able to make a specialist referral.  I am sorry that I cannot provide you with a more favorable response, but perhaps your visit tomorrow will find a solution for your discomfort.[2]

Plaintiff then sent a letter to Warden Tanner.  On September 29, 2014, Cook responded, stating:

> Your letter to Warden Tanner regarding your medical problem has been forwarded to me for a response.  Your complaint is that your condition has not improved since your visit with Dr. McVea.  You stated that you have not received the results of various tests that have been conducted.  You indicated that you are also requesting that you be allowed to see a specialist.  Neither Warden Tanner nor I are medical doctors.  Dr. McVea is the Medical authority at RCC and is competent and compassionate.  Hopefully he will be able to find a solution to your problem.  He alone is able to make a specialist referral.  If you are continuing to experience a problem with a rash, you will need to make another sick call.  I am sorry that I cannot provide you with a more favorable response.[3]

Plaintiff next filed a formal administrative grievance.  However, prior to receiving a response, he again saw Dr. McVea on October 1, 2014.  At that visit, Dr. McVea agreed to schedule a dermatology consultation.

On October 14, 2014, Warden Tanner denied plaintiff's administrative grievance, stating:

> Response to requested dated, received in this office 09/10/2014.

---

[2]   Rec. Doc. 1, p. 24.

[3]   Rec. Doc. 1, p. 25.

2

Your complaint has been reviewed and investigated.  A review of your medical record has also been conducted.

According to your medical record, you made a sick call on July 15, 2014, complaining of having a rash under your arms, chest, and hands.  When Dr. Casey McVea, Health Care Authority, reviewed this health care encounter, he ordered that you be scheduled a routine appointment to see him.  This appointment was scheduled for September 24, 2014.  However, because of Dr. McVea attending a conference, this appointment was rescheduled for October 1, 2014.  During your appointment on October 1, 2014, Dr. McVea prescribed Benadryl three times a day and Dove soap.  Dr. McVea also made a referral for you to be seen in the Dermatology Clinic.  Once we receive a confirmed appointment, you will be transported accordingly.

No further relief is warranted for this complaint.  Your request for remedy has been denied.[4]

Plaintiff then appealed the denial of his grievance.  However, that appeal was denied by the

Headquarters of the Louisiana Department of Public Safety and Corrections on November 25, 2014.

That denial stated:

Response to Request Dated 10/14/2014, Received in this Office on 10/23/2014:

Your request for an Administrative review of ARP# RCC-2014-490 has been received.  A qualified member of the Headquarters staff has reviewed your request in order to render a fair and impartial response.

Your statement has been considered as well as your medical records.  The medical staff is well aware of your medical condition and has adequate information upon which to base a determination of your medical concerns and the treatment necessary.  As stated in the first step response and which is supported by your medical records, a treatment plan has been given for your medical concerns and when the medical staff is informed of your appointment date and time, you will transported accordingly. Medical opinion is controlling. The medical care you have received and will continue to receive is deemed adequate.  No further investigation will be conducted as this issue has been clearly addressed in the first step response.

Therefore, your request for relief is denied.[5]

---

[4]   Rec. Doc. 1, p. 7.

[5]   Rec. Doc. 1, p. 8.

However, by the time that appeal was denied, plaintiff had already been allowed to consult a specialist.  Specifically, on October 7, 2014, plaintiff participated in a tele-med conference with a dermatologist[6] who prescribed an oral medication.  Unfortunately, plaintiff alleges that the oral medication also did not work, and his problem remains unresolved.

In order to conduct the screening mandated by federal law, the undersigned obtained and reviewed certified copies of plaintiff's medical records.[7]  Those records corroborate the foregoing information and show that plaintiff was ultimately diagnosed as having Tinea Versicolor, a fungal infection of the skin.  Over the course of his treatment, he was prescribed various medications and other products, including Benadryl (an oral antihistamine), Diflucan (an oral antifungal medication), Temovate ointment (a topical cortiosteroid), Kenalog cream (another topical cortiosteroid), Selenium Sulfide shampoo, and Dove soap.

## I.  Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

---

[6]   In the complaint, plaintiff refers to the dermatologist as "Dr. Soil"; however, the medical records from that consultation indicate that the physician's name was actually Dr. George Havard Albright.

[7]   Those records have been filed into this federal record.  Plaintiff was provided with a copy of the records for his review and use in this proceeding.

(1) is frivolous, malicious, or fails to state a claim upon which relief
may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit,

federal law similarly provides:

Notwithstanding any filing fee, or any portion thereof, that may have been paid, the
court shall dismiss the case at any time if the court determines that ... the action or
appeal –

(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or
(iii) seeks monetary damages against a defendant who is immune
from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27

F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the

Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory,

but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those

claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327

(1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not

"plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must

be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches

Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).  The

United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[8] the undersigned recommends that, for

the following reasons, the complaint be dismissed as frivolous and/or for failing to state a claim on

which relief may be granted.

### II.  Claims Against Warden Robert C. Tanner and Assistant Warden Wayne Cook

As to the claims against defendants Tanner and Cook, those claims must clearly be

dismissed.  They are not medical professionals, and they had no direct involvement with plaintiff's

medical care.  Although they hold supervisory positions at the jail, supervisory officials cannot be

held vicariously liable for the actions of their subordinates pursuant to 42 U.S.C. § 1983.

Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742

(5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

To the extent that plaintiff is seeking to hold Tanner and Cook liable for failing to resolve

his complaints after he submitted a grievance, that claim has no merit.  An inmate has no

---

[8]     The court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

6

constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his satisfaction. <u>Bonneville v. Basse</u>, 536 Fed. App'x 502, 503 (5th Cir. 2013);  <u>Propes v. Mays</u>, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); <u>Geiger v. Jowers</u>, 404 F.3d 371, 373-74 (5th Cir. 2005); <u>Davis v. St. Charles Parish Correctional Center</u>, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); <u>Carter v. Strain</u>, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); <u>Tyson v. Tanner</u>, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug.  25, 2009); <u>George v. Travis</u>, Civ. Action No. 07-986, 2007 WL 1428744, at *7 (E.D. La. May 10, 2007); <u>Mahogany v. Miller</u>, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), <u>appeal dismissed</u>, 252 Fed. App'x 593 (5th Cir. 2007).

III.  Claims Against Dr. Casey McVea and "Dr. Soil"

Turning now to plaintiff's underlying medical claim, the Court initially notes that a prisoner's constitutional right to medical care is extremely limited.  Specifically, under the Eighth Amendment, a prisoner's right to medical care is violated *only* if his "serious medical needs" have been met with "deliberate indifference" on the part of penal authorities.  <u>See, e.g.</u>, <u>Harris v. Hegmann</u>, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." <u>Gobert v. Caldwell</u>, 463 F.3d 339, 345 n.12 (5th Cir. 2006).  A rash is not normally considered a "serious medical need" for the purposes of constitutional law.  <u>See, e.g.</u>, <u>Guy v. Carter</u>, Civ. Action No. 13-5730, 2014 WL 644321, at *9 (E.D. La. Feb. 14,

7

2014); Wilson v. Rascoe, No. 2:10CV91, 2012 WL 4465566, at *7 (N.D. Miss. Sept. 25, 2012);

Gonzalez-Reyna v. Ellis, No. 1:09cv522, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009).

In any event, *even if* plaintiff's rash could be considered a serious medical need, he must *also* be able to show that Dr. McVea and "Dr. Soil" acted with deliberate indifference.  However, as the United States Fifth Circuit Court of Appeals has observed:

> Deliberate indifference is an extremely high standard to meet.  It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.  Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."  Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).  That is certainly the case here.  Based on plaintiff's medical records, it is beyond cavil that the defendants did not refuse to treat him, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct evincing a wanton disregard for his medical condition. On the contrary, plaintiff was examined repeatedly and provided with several different courses of treatment.

That, of course, is not to say that plaintiff's care was optimal or that all of his concerns were resolved to his satisfaction. However, that simply was not required. The fact that an inmate's medical treatment "may not have been the best money could buy" is insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). Therefore, if an inmate in fact received medical treatment, federal constitutional protections were not violated just because that treatment was unsuccessful or because pain persisted despite the treatment. Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). Moreover, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of *state* law for *state* courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

Lastly, the fact that plaintiff apparently believes that more could be done for him is of no moment. Absent exceptional circumstances, a prisoner's disagreement with his medical treatment

simply does not constitute deliberate indifference.  <u>Gobert</u>, 463 F.3d at 346.  For example, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment."  <u>Estelle</u>, 429 U.S. at 107.  Generally, such matters of professional medical judgment are better left to the expertise of physicians rather than to the legal expertise of judges.  Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions.  <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); <u>Castro v. Louisiana</u>, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action.").  There is no basis whatsoever to engage in such second-guessing here.

In summary, the determinative issue before the Court is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problem persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether he had a serious medical need which was met with deliberate indifference.  He did not.

## <u>RECOMMENDATION</u>

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415,

1430 (5th Cir. 1996) (en banc).[9]

New Orleans, Louisiana, this twenty-third day of January, 2015.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[9]    <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.
Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen
days.